Page 222636 AP v. The New York City Department of Education Page 222636 AP v. The New York City Department of Education Appeal Report Page 222636 AP v. The New York City Department So just exclude me for just one minute. I'd like you to travel back with me in your mind's eye to four years ago, September 2020. Perhaps you were home with your family, perhaps you wereStill wiping down your groceries with Clorox perhaps you were reading the news. Scientists and journalists warning us all to stay home or if we must leave the House to wear a mask. News of upcoming next wave was prevalent. And it was amidst this backdrop that the parents in this case, indigent immigrant parents made the difficult decision of having their oldest child 10 years old with severe autism to continue to stay in remote schooling where she was making substantial progress. And there's no finding that the parents decision to keep the child at home was in any way wrongful or unsupported by the child's condition. No, all of the fact finders here found that the all equities favor the parents, the parents did absolutely everything right. And indeed, there's case law saying where the DOE has failed to afford the child an IEP or a FAPE that the equities cannot favor the DOE and must pay for the parents. In fact, here, the district court found that all the parents decided not to send her back to school at the beginning of the turn in the fall of 2020, because her autistic behaviors made her susceptible to perhaps becoming infected with COVID. Both her parents had suffered significant COVID infections. Had they not? Correct. Has had her younger sibling? Her younger sibling also had severe autism. She did not contract COVID. The parents had been bedridden for months. So no one said that the parents concerns with regard to their own health and her attendance during in-class instruction in any way was contrived or unreasonable? No, not at any point, your honor. And was there not also a finding by the district court that it adopted the findings of the hearing of the initial findings of the hearing officer that she had improved remarkably during her remote tuition, under her remote tuition plan? Yes. Remote education plan? Yes. And absolutely. And that's, it's worth noting that the IHO reached that determination in favor of the parents in November, 2020. Further evidence adduced in June, 2021, her progress report showed even more progress. In fact, unprecedented progress that AP had. She'd done, she'd curiously done better with regard to the, the, because her progress is measured, not just in her ability to read, but also in her ability to manage her behaviors. Is it not? Absolutely. And that's a part of her individual education plan. Well, excuse me. She never had one. Forgive me. I apologize. And so therefore her ability to manage the world is also part of her ability of part of the function of her ability to learn. Absolutely. And those showed remarkably improved improvements during the time that she was going, that she was getting three hours of intensive instruction. Remotely. Remotely. And then pursuing five additional hours a day, which was instruction, but was of a different character. Is that correct? Correct. Children learn through all methods. Children with autism and AP in particular had a weakness in activities of daily living, learning to wash your hands, using the bathroom. In this remote school year, AP developed unprecedented progress of becoming toilet trained, of reducing her tantrum. There was a universal decline in all of her maladaptive behaviors, tantrums, hair pulling, all of the such. And that is because in those five hours, she was applying what she was learning in those three hours for remote instruction under the supervision of her parents and her home. So no one is a deaf. Everyone agrees that the school was the right school for her. Correct. Right. And so this is an instance where there was no IEP. So the parents under our, under the case law say, parents have a right to replacement, but it has to be an appropriate school. Department of New York City, Department of Education does not contest that this is not an appropriate environment. That's correct. So the parents aren't the problem, which is sometimes the situation in these cases, we've seen many of these. Second of all, COVID comes, there's no vaccine until February of 2021. That's correct. So you can't vaccinate her and send her to school. And so therefore they make a decision that nobody objects to, to stay home. And because she's staying home, she can't have a full eight hours. Right. Now that five hours that she gets, is that something that's suggested to her by the school or is that something that mom comes up with? No, that is something that a holistic team at Keswell developed during the remote planning sessions. We, there was a 34 page remote learning plan with goals and behavioral reduction plan that the entire staff worked together, spent weeks to put together. Because for some reason, it seemed like there was a perception that three hours coming towards the school, five hours didn't, but five hours was spent doing things that the school wanted her to do. Absolutely. 100%. Yes. And who has the responsibility for negotiating with the school, what the price of her education is? Who pays the bill? Who pays the bill? The Department of Education does not. In this case, because the family is indigent, they were attending on a prospective basis that the school was not taking tuition beyond the $100 deposit and the DOE was on the hook for the full tuition reimbursement. It is worth noting that when the parents signed the enrollment contract for the 2020-2021 school year, that was in July, all the students were remote. No one had any idea what was going to happen in September. No one had any idea what was going to happen in November or even in February. Can I follow up on one of the questions Judge Wesson asked about the five hours of the day that were not the individualized instruction? What was going on there? I understood the district court to just be prorating. You got approval for a full day and you only took three hours and so that's the reimbursement amount, and that seemed fairly logical to me, but what was going on in the other five hours? She was engaged in active learning. She was working on assignments. She was applying the skills that she was acquiring in the live instruction. There is no case law. But they're not under the school's supervision, just talking about. Developed by the school. So, in essence, under the school supervision in that they had developed this program, set of suite of programs, both to happen during live instruction and non-live instruction throughout the day, and then they would check in on the progress during the live instruction. There is no case law, Your Honor, saying that there's prorating that needs to happen. We'll take COVID out of it. What if it was just the five hours of the day the parents wanted to do other things and that was not what the plan had provided for them? That's completely different here. It was not safe to the child's health to attend in person and remote instruction, as educational sources have shown, it works differently. Children cannot handle, typically, more than two hours a day of remote instruction. Neurotypical children cannot handle more than two hours. Here, AP with severe autism was able to handle three hours. That's more than the typical child. Does your argument depend on the legitimacy or the validity of the parents' concerns about COVID and remote instruction versus in person? Because I just asked you if they just opted out of five hours a day and said three is enough, and that wasn't what the plan called for. Oh, that's a completely different case. That's that would be our position that here the parents did the best they could under the limited circumstances they had, which was that this kid could not keep a mask on, had a habit of not washing her hands and putting non-food objects in her mouth. Her commute was hours long by subway, bus and foot. This calls for a very specific factual situation where if your honors wanted, you could issue a narrow decision pertaining to this particular fact pattern. Furthermore, the DOE has waived pretty much all of its arguments on appeal. They did not contest anything in the impartial hearing. And so there was no responsibility or burden for the parent to preempt all of these arguments that they made. They wait until April 2023 to make. That's three years after the fact. The parents did not have a burden to negotiate the tuition or to find another placement when their child was doing perfectly well in this placement. And in fact, under the exigencies of COVID, we would submit that finding another school placement in such short order when they had already committed by contract in July 2020 was near impossible for this child with very particular needs. But what's clear from the record is, is that there was eight hours of instruction a day. Three of it was live, Zoom or whatever. We live in a different world than we did in 2019. But three of it was live. And then five of them were pursuant because she wasn't the only child that didn't come back. Correct. There were a group of children that did not come back. That's correct. And so there was an instructional plan, a booklet or whatever. What was it? There were assignments that her teachers developed for hers because she required one-on-one learning and instruction that was calibrated to what she needed and what she needed to learn and develop. So we would say that... What's curious is that the result is significant improvement, which the district court specifically notes, but then somehow doesn't appreciate or for some reason differentiates the five hours of her self-help with mom from the three hours of live instruction from the school. Correct. And yet you say there's no reason, there's no logical reason to differentiate between them. There's no support in the factual record. There's no support in the case law. There's no support in the statute. We've read the district court's decision many times and could not find the reasoning to support that reduction except, I guess, an implied prorated approach. But DOE didn't argue for that at any point. Can I ask just structurally for the analysis? Is what the district court is doing and the IHO, I guess, concluding that the placement was partially appropriate and then so prorating in the sense of the partial appropriateness? What I read the decisions to say is that Caswell was appropriate, end of sentence. A district court said either a placement is appropriate or it's not. That's from the decision. But then the district court seems to say- Is there a law for that proposition, that a placement is either appropriate or not appropriate as opposed to can a placement be partially appropriate? There's only law insofar as there's no case law that I know of that says a placement is partially appropriate. Either a placement has been deemed appropriate in case law or has been deemed not appropriate. What the district court then goes on to say is that the placement partially met AP's needs because of this three to eight proportion of hours, which doesn't quite jive with the appropriate versus not appropriate analysis, right? Is your argument that if it's determined to be appropriate, a placement, then the only appropriate remedy is full reimbursement? Unless the equities favor reduction. So there is case law saying that tuition can be reduced where parents have not cooperated, have obstructed the DOE's attempt to give the child an IEP or FAPE. Here the DOE did not lift a finger. This child is currently 13. The last time she had a public placement to attend was when she was five. I was going to ask you that. What's happened since the district court's decision? Well, since- Excuse me. Since the SRO decision? Well, the decision taught the school that they could not count on the law to protect indigent children like AP. The school kicked AP out despite her substantial progress. She ended up staying at home, receiving myriad services that she had credit for, but she did not have what's considered a typical school placement for a year. And now she's back in another private school. And our hope is that this error in the law can be rectified so that schools, these private schools that do have what's called Connor's placements for indigent children, can believe that once the Burlington-Carter factors are met, they will get paid and reimbursed for the tuition. What's the relief she gets if you win? I'm sorry? What's the relief she gets if you win? The school gets full tuition. She- I don't see the school here. I'm sorry? I said, I don't see the school here. Is she- She- Got her parents on the hook for the school, for the bill? Yes. So she- Boy, I thought you said earlier that the school contract means that the parents aren't on the hook for the bill. The parents are on the hook for the bill. They were attending on a prospective basis on the assumption that the parents would get If there is no reimbursement, A, she gets kicked out, and two, she misses out on that credit of being able to pay the school back. And I don't want to venture what the school might do in those situations. But we're talking about the one school year, 2010 to- 2020 to 2021. 2020 to 2021. Correct. Yes. Okay, all right.  I see my time is up. Thank you. You reserved a few minutes for rebuttal. Yes. Thank you. Ms. O'Brien. Good morning, your honors. And may it please the court, Lauren O'Brien on behalf of the Department of Education. The award of partial tuition here was a proper exercise of the district court's discretion, given the reduction of services by more than half in the 2020-2021 school year. Was she entitled to- Was her- Was her parents' decision to stay home irrational or somehow inappropriate? You never confessed, did you? It's not our position that- And I'm not trying to browbeat you. But the fact of the matter is, is that you never objected this child's staying home. Well, it isn't necessarily our position that- You don't think that it was in any way inappropriate with regard to this child's education that she stay home and have three hours of direct instruction by Zoom, and then have five hours of instruction monitored by her mother in a program produced by the school. Did you? Your honor, it's not our position that it was wrong for her to be- You find many times, we see cases where parents interfere or have a perception that the placement's inappropriate or that they don't want their child in a public school. They want their child in a private school. And the battles about whether it's an appropriate placement. It's conceded that the school was appropriate. And it's conceded that the plan was appropriate with regard to this child's needs, correct? Correct. And was the child receiving any instruction during the five hours in the afternoon? So on that point, the only evidence in the record is that the additional assignments and videos were being sent home to the student for the remainder of the day. But there's no evidence really in the record that of her completion of those assignments, of how those assignments were being- What do we know about the results, though? We know, quote, marked improvement. In fact, the most significant improvement this child had during the period of time that she attended the school. So we know something good was going on, do we not? And so the only thing that we can measure and understand is that she got her behaviors, which interfere with her ability to connect with the world and to learn, improved. She stopped throwing herself on the floor. She stopped pulling her hair. She stopped displaying some of the difficulties that autistic children display. Your Honor- And so I don't understand then how it's rational that we parse out five out of eight hours when she was actually learning. What's the exercise of discretion that justifies not paying for those five hours? Sure. So just the first response is that it's been pretty consistent in this court's prior case law that progress alone on its own is not dispositive of whether- Fair enough. And then second, I would, you know, I just know that sort of, these are two different contexts and environments. So it's sort of difficult to compare apples to apples. Does the DOE take the position that the five hours of instruction by this generalized program that was developed, you haven't disputed that that happened, was inappropriate? The answer is no. So DOE- You just gave me that a few minutes ago. It was no. So it's our, it is our position that the placement at Caswell is appropriate. I think the considerations that were underlying the district court's decision is the reasonableness of the tuition, given the fact that the record really shows that the student was really only receiving- Did you think that, did DOE take the position that the placement at the school was inappropriate because of cost? No. So initially- The answer to that is no, is it not? Well, just in response to that, the way that this system works is that it unfortunately puts some level of risk on the parent who- Did you do, did you represent the district at the district court? I did not. All right. Do you know what the district's position was in front of the district court? Was the district's position for the district court that the five hours cost too much for what they got? So the position was that the student was only receiving three hours out of the usual eight hours of instruction. And at the district court level, their argument was that that made the placement for that year inappropriate. On appeal, we aren't- I understand that to be sort of just proration, that it's just math. Is that balancing of the equities? I understand the ruling from Carter test to be, if it's an appropriate placement, then the presumption is you get the full reimbursement and it doesn't matter how much it is, unless the equities somehow dictate otherwise. And I don't know that three hours out of eight is sort of balancing of the equities. Can you address that? Sure. So it's within the IDEA and in case law, it's established that the district court has discretion to award such relief as the court determines is appropriate. So that's section 1415 of the IDEA. And that's been repeatedly confirmed by the Supreme Court in Forest Grove that even after the court decides that private placement is proper, courts still retain the discretion to reduce the amount of reimbursement based on all relevant factors in determining whether reimbursement for some or all of the cost of private tuition is warranted. Yes. I didn't see a weighing of sort of all the things that are going on, including Judge Wesley mentioned about the city not being engaged for five years in developing an IEP where presumably it could have helped balance the COVID concerns with the number of hours of individualized learning and things like that. So I think for the district court, that went into its determination that the placement was appropriate and its decision to overrule or reverse the decision of the SRO, which had found that the placement was inappropriate as a result of this reduction of services. And, you know, we agree that those factors should be weighed and should go into whether the placement was appropriate and whether some amount of tuition should be reimbursed. Do you agree that it's off or on in terms of appropriate placement? There's not under Burlington-Carter factor two, you can't make a determination of a partially appropriate placement. I mean, that's sort of how I read the district court decision because district court goes on to say the IHO correctly determined that the equities favored plaintiffs because there was no evidence of failure to cooperate. So it seems like the district court and I think the IHO made a determination of partial appropriate placement, fund that in whole, that partial appropriate placement and the equities don't suggest concluding otherwise. Is that the wrong way to read the decision? I do think that that's where the IHO and the district court factored in this consideration about the reasonableness of tuition. But the department doesn't agree that's the right way to understand. Ultimately, I don't know that it matters much where you place it, but I think based on this court's precedent, in my view at least, I think it's usually an on-off switch whether tuition reimbursement is appropriate based on the Burlington-Carter factors. And then once we get there, there's a consideration of what relief would be appropriate. And district courts have the discretion under the IDEA to determine all relevant factors, including the reasonableness of tuition. We don't have that ultimate, and we don't have that analysis here by the district court of that kind of holistic balancing. So I think that the district court expressly deferred to the IHO. It said that when the SRO's opinion is not well-reasoned, it can look to the IHO's decision and find that well-reasoned. And the IHO based its decision to award partial tuition on the three out of eight hours of services that were being provided to the student. And in our view, the district court did the same thing. And we just think that there's support in the record for that exercise of discretion. Again, very little evidence about what the student was doing the other five hours. So unless, and just- The department, if you have, if you remove the sort of remote learning context, and there's a placement that the plan requires X number of hours of one-on-one instruction, and there's an appropriate placement in that context, does the department get into what's going on in the other hours of the day? So you're saying if in a similar situation where there's a certain number of hours? Yeah, so that the child needs, maybe this isn't what it looks like, but the child needs at least four hours of one-on-one instruction a day, and the school provides that. But the other hours of the day, it's not one-on-one instruction. Do you have the department either resisting that that's an appropriate placement, or seeking some kind of prorating of reimbursement? I think if everyone agreed that that number of hours was what the child needed, and was appropriate to the child's unique needs, then there wouldn't necessarily be a problem here. But the IHO, which is the entity with the expertise in this area, stated that this student needs a full day of one-on-one support and services, and based its decision to award reduced tuition in part on that. So this is just, I think, a different situation. And just to quickly... Let me ask you that. In front of the IHO, was the record pressed that was the department's position that it should be a full day, even remotely, that she should have eight hours a day? So I believe, in the IHO, there was... Because the district court's decision is a grand total of six lines long, in terms of, it just says, as discussed above, the preponderance of evidence supports the IHO's finding that the remote live sessions AP participated in for three hours was appropriate. She is therefore entitled to partial reimbursement for tuition. There's no finding. There's nothing from the district court. The district court looks at it like it's a binary decision. Affirm the IHO, or affirm the state review officer. And that's not an exercise of discretion. That's picking. So I will say, up until this appeal, the Department of Education was taking the position that it was an inappropriate placement. We decided not to appeal the part of the order below that awarded partial tuition. We decided not to appeal that part of the order. But just in response to the argument that our arguments are all waived, just because we didn't appeal that part of it doesn't mean that we can't respond to the challenge to the district court's order. It's a subset of the whole thing being inappropriate, that part of it isn't. Right, and it was passed down below, so it's subject to review and appeal. And finally, I'll just note again, there's really no evidence about the remainder, very little evidence about the remainder of the day that's at issue here. In front of the IHO and the SRO, was there proof about what she would have done if she'd gone eight hours a day, as opposed to three and five? So there was proof of what she would have been receiving or what she was receiving when she was going in person. And there was proof that that was an eight hour day. What she'd achieved, was that then measured up against what the DOE thought might have been achieved had she gone eight hours a day for direct instruction? So there was proof both about the services that she would be receiving and what she had achieved during that year. It's our contention that neither one of those two things is dispositive. Again, it's difficult to know how she would have progressed if she had been receiving the full eight hours of services. Thank you very much. Thank you. Your honors, there's no evidence in the record about the five hours because the DOE did not contest or make this argument until again, April, 2023. They're not allowed to go back and sharpen their arguments and dodge the ones that failed. Further- Defending the judgment below. I mean, they didn't know that that's what it was gonna be. Right, but we didn't have an opportunity to introduce evidence because they didn't raise it at hearing. There was in fact, no contest at hearing. The DOE did not take the position that Caswell was inappropriate. The DOE didn't introduce any evidence, didn't even make opening or closing statements. We offered for the mother to testify. There was no interpreter available. Again, this was very early in the pandemic. And the DOE and the hearing officer said that they didn't have any issues for the mother to address. Had there been any issue, the DOE should have raised it then and we would have promptly introduced evidence. It is not on the parents to introduce all of the evidence under the sun. In fact, this mother had quit her job just to supervise AP's learning and had been tracking daily logs, had been making notes to the school very closely. We would argue in fact, that she spent more than eight hours supervising her child's learning. As for the deference to the IHO, the IHO's opinion is even more flawed than the SRO's. The district court did not defer to the SRO because the SRO did not have the June 2021 progress report, which was very illuminating on AP's progress. The IHO didn't have that progress report. The IHO rendered a decision in January 2021, again, at the height of the second wave of the pandemic and faulted the parents for not having evidence of progress so early in the school year. This was barely a semester in. In November 2020, she had only been in school for that school year for a couple of months. Counsel, can I ask, to the extent what the district court did here was a prorated reduction as a kind of fashioning of appropriate relief, what do you understand our standard of review to be as to what the district court did? I, because this is an appeal of summary judgment on the issues of law, which I believe the district court was applying the law on Burlington-Carter. To the extent there's an equitable determination made, yes, so it's an appropriate placement, therefore reimbursement, but an equitable consideration requires a reduction. Is that an abuse of discretion? Standard of review for us? It would be, I suppose, a mixed question of fact and law, so abuse of discretion, but there is no finding of fact here supporting that determination, that exercise of discretion, if we are to call it that. The district court does not come out and say I am exercising discretion to reduce the tuition. There's no reasoning at all. And what my colleague cites, U.S. 1415, says that that exercise of discretion by the district court must be supported by a preponderance of the evidence, a preponderance. There's no evidence here to support that. And at no point did the DOE say that you must introduce evidence on the five hours until now. So the record is, as my colleague states, barren on that issue. Reasonableness of tuition, vis-a-vis hours, live asynchronous learning, that has not been raised. That is not in the record. I don't know on what basis the district court would have relied to exercise that discretion, especially because there is no finding on that issue either at the IHO, SRO, or district court. The DOE seems to argue that the amount of tuition is expensive for taxpayer dollars to undertake. The Supreme Court has time and time again said, if public school boards want to save taxpayer money, they must give the child a free and appropriate public education. Develop an IEP, give them accommodations in a public school, and save taxpayer money. It's as simple as that. Here, the DOE sat on their hands for almost eight years now. And now would hold the parents responsible while suffering from long COVID to go out in the world during the shutters of the pandemic and look for another placement because of the five hours issue that they never raised until three years after the fact? What justice is that? I mean, the outcome here punishes AP for her particular special needs. She had particular special needs that made COVID very dangerous to her. And it punishes her for indigent status. That is against this court's case law in IDEA under TK, under East Lime, all the cases that we cite. The IDEA promises children with special needs a free and appropriate public education regardless of any of their needs, financial, special, disabilities, or otherwise. So if your honors have no further questions, we ask that you reverse the district court in part. Thank you. Thank you, counsel. Thank you both. Take the case under advisement. Nicely argued. Thank you.